Case number 23-3672, Frank Savel v. MetroHealth System Arguments not to exceed 15 minutes per side Mr. Troyer, you may proceed for the appellant Good morning Good morning May it please the court, John Troyer here to represent Frank Savel as well as the 45 other named plaintiffs and a potential punitive class action as well I'd like to reserve three minutes for my rebuttal time First off, I would like to share what this case really is not about It is not about any animus toward the vaccine mandate It is not about the severity of the pandemic or anything in that regard It is really about the categorical denial of every class member's request for religious exemption and accommodation from both the COVID-19 and flu vaccine mandate put in place by MetroHealth If you look and see in our complaint, you will see that there is disparate treatment alleged in that medical exemptions were granted, they were reviewed in a timely fashion, and a decision either yay or nay was given to them, some within 30 days However, not a single religious exemption was granted A decision was delayed from the time of the announcement of the mandate for over five months At which point in time they then categorically denied every exemption request in an identical email How do we handle the people? Obviously the company, like everyone, was struggling with this So you get the vaccine comes out, they decide they need to require this But there's clearly some ambivalence, right? And they're trying to figure out how to implement this because they, what, it's originally October 31st? Is that the original deadline? October 31st was the original compliance date Then ultimately it's March 24th And then, of course, they change their mind even about that So it's the people that don't leave the company What's their damage? How does that work? What's their damages? Well, again, in reading the complaint One more time? Again, in reading the complaint, they endured for seven months a non-decision on their request for accommodation They also... What's the adverse action to them? The adverse action was in regards to the disparate treatment and the disparate impact Like, did it translate into diminishing salary, transfers? What's the... If you look at all of the various allegations that are included by each plaintiff Each of them have their own reasons and damages that were incurred Some incurred actual medical expenses caused by the stress of having a termination A real clear deadline of termination notice over their heads pending for a period of seven months So you're saying, like, emotional distress and they're seeing a doctor And you're saying that was an example of something concrete? It was concrete injury, yes, for many of them So the thing I was struggling a little bit with is tracing that to actual people Like, I would see general arguments about emotional distress, which I understand I'm not being unsympathetic to the point But did you... Were you careful about saying, okay, this was the person This was when they saw the doctor Here's what the cost was At this stage of the pleadings, all we have to do is state a plausible case for damages And in stating that I, due to the stress... As it were, a single plaintiff, okay, if there was a single plaintiff And the point was emotional distress, I don't think you can just say it I think you've got to... It's not like you're disadvantaged, it's not hard to say It was something that led to medical treatment So if I understand the question It is that if a plaintiff were to allege Due to the way this mandate was implicated For the religious exemption class As opposed to others who requested exemptions If that caused me undue stress Such that I had to seek medical attention Incurring real hard, out-of-pocket financial costs That that would be insufficient to state a claim for relief? I'm not saying it would be sufficient if you tied them all together And that's what I'm asking Did you tie them together? Well, we believe that we did And I think that it's important to read the complaint as a whole Because there is a section of facts relevant to all claims Preceding each of the recitation of facts for each of the individuals And one of those... Can you give me an example of an individual that suffices On this point of emotional distress Seeing a doctor incurring that expense? You can do it on rebuttal if it's easier Yeah, I will find you several of those on rebuttal That had out-of-pocket expense I only see a couple of people who resigned After their exemption requests were denied And that scenario doesn't fit any of the others So the two who resigned After their exemption requests were denied May have standing here But why do any of the others have standing? Because, your honor, they were given clear and certain dates Within which they must either violate their Sincerely held religious belief Or face termination Even though that date was At some point in time in the future It was not an uncertain Constantly shifting, never to be determined thing It was a communication from management From the highest levels of Metro Health Administration That you must comply by this date, certain But Metro Health didn't respond to A lot of the... Or had not then responded To the exemption requests I guess some resigned saying they were discouraged From seeking an exemption Others, the company hadn't made a determination as of yet And it seems as though one plaintiff resigned After his exemption request was denied But the complaint doesn't allege whether this occurred before After the company reversed course So, there's only a couple of people who resigned After the exemption request They resigned after their request for exemption was denied But before the company reversed course So, again, I'm not seeing where the others Even have standing to bring this Well, your honor, I would assert that it's not reasonable To force them to simply wait an indefinite length of time To receive a decision on their request They were being told through supervisors and elsewhere That Metro Health was denying And going to deny all religious exemption claims They were also seeing colleagues Who had submitted medical exemption claims Have those granted And done so in a timely fashion So, in putting that together It was reasonable for them to believe that Look, they're simply trying to drag this out In the hope of removing as many of us as possible Short of actual termination And, as a matter of fact, we allege that in the complaint itself If you look at paragraph 46 This was really designed to be a scheme of Metro Health To purge those employees who had sincerely held religious beliefs That prevented them from complying with the vaccine mandate All of this about the vaccine Was a matter of great controversy and debate Within the society and probably also at that company It's not clear that the employees could foresee How the debate would turn out And while the controversy was unfolding They still had their jobs And meanwhile they had to endure taunting They had to endure constant, I hate to use the word threat Because I think the case law Misapplies the use of the word threat The cases that talk about threats of termination Really are dealing with Where a supervisor says something to the effect of Do you want to stay employed? It's a threat as to whether or not That person even has that power to do so Didn't we pretty much decide this issue in bar already? I mean we had a very analogous case And we said yeah, there was maybe uncertainty There was maybe some stress, but no standing You kept your job, you were grandfathered in the whole time You didn't have to get a vaccine I mean it wasn't until February 7th As Judge Clay points out, until very late in the end That anybody was actually denied And we said, not enough for standing The difference in this case between Excuse me if I mispronounce it, but I read it as bare Oh, maybe bare, sorry Cardinal Health, thank you Is what transpired in the interim And as a matter of fact the bare decision says flat out That bare conceded that he had no injury So at the point then on appeal He tried to say that the injury was the mandate itself That's not our claim here Our claim is what transpired in that intervening 5-7 months Between the time the exemptions were requested And a decision ultimately came down Now in the meantime Each of those extensions included again A date certain by which they must comply Or they would be terminated So can I ask you about the group The few folks that actually left And just try to sort that out So what's your theory, I get it that I can see bare harm, don't have a job You don't really present it as a constructive discharge case Although I think that phrase is there once Is that your theory, constructive discharge Or what is your theory as to the folks That actually leave the job What's your theory there Yes your honor, for those that actually did resign It is our basis that it was a constructive discharge Just help me out with this This is not totally informed But just my rough sense of that line of cases And doctrine I thought that emerged from sexual harassment cases Where you're never technically fired But you're not going to seek You can't keep staying You're essentially forced out because of the misconduct What's a little unusual here Is you could have brought an injunction I mean those people didn't want to stay Could not stay Here people could stay, want to stay That's their point And that's their theory of damages We were hoping to stay there for another 30 years But for this problem we would It seems very funny to think of constructive discharge In that setting where you actually do have A form of relief, get an injunction, stop it You can't do this So I guess I'm struggling with I'm not saying there's not a theory available For the people that left I'm just trying to figure out why that's the one Or how to think about it We did, your honor, actually prepare a motion for injunction And at 1130 on the day that we were prepared to file that Was the day that CEO Boutros did a reversal And then categorically granted Every single religious exemption request And what's interesting about that How does that help you in terms of what I'm saying? Well, in terms of that we did The injunction issue was an issue that we did pursue But in terms of, it changed the structure of the case Hadn't plaintiffs one and two already resigned By the eve of March 14th Right, the reversal was on March 15th Correct, so did we move to enjoin prior to their resignation? No But again, is that necessary? I mean, the whole theory is you had six months And the six months could be This is a good reason for me to shift anyway But constructive discharge is forced out And forced out because You can't possibly go back there Because that's the source of the harm And here you do want to stay Or you really did find a better job I mean, that's the other possibility So anyway, there were six months Obviously everyone, as Judge Clay pointed out Was shooting in the dark on this Very complicated issue But they had no problem making those decisions for medical exemption requests And it is that disparate treatment that really hinges And undergirds our case here Similar delays were not employed for other exemption requests Only for this particular What were the number of medical exemption requests? We don't know that because we never got to discovery It was a motion to dismiss, so we don't know for certain What do you know publicly? Public announced reports that there were at least 400 exemptions total How many were medical? That were given or that were sought And this was statements by Metro Health made to public media How many religious exemptions were sought? We don't know that breakdown of that 400 How many were medical, how many were religious I know that our firm in particular was dealing initially With over 200 individuals Why don't we hear from the other side And I'm sure we'll have more questions for you Thank you, Your Honor Good morning Good morning, Your Honors May it please the Court I'm Stephen Zashin from Zashin & Rich On behalf of Metro Health System This Court should affirm the dismissal of this case As decided by the District Court In this particular case, the District Court found that some of the plaintiff Appellants did not have Article III standing Because they failed to allege any injury sufficient to establish standing And the remainder Failed to state a claim for religious discrimination Because they did not allege that they were disciplined or discharged As is required by the Sixth Circuit Am I right to read your brief as not challenging the standing decision As to the resignee plaintiffs like Plaintiffs 1 and 2? No, Your Honor I think, Your Honor, in those particular instances I also believe that they lacked Article III standing And one of the things that I do wish to address is the group of plaintiffs As Judge Clay identified Because I think each of these groups of the 46 Have different issues And the Sixth Circuit law on each of the issues renders all of these cases Dismissible and properly dismissed Can you focus on Plaintiffs 1 and 2 as Judge Clay was asking? Sure, so Plaintiffs 1 and 2 They resigned on March 7, 2022 And Appellant 2 resigned on March 11, 2022 That was after MetroHealth had already denied their exemption But shortly thereafter on March 15 Had reversed course In that particular instance These plaintiff appellants lacked standing Because there was no imminent harm Per this Court's holding in Buchholz v. Tannick Which in that case was a Fair Debt Collection Practices Act case And this Court basically held that in such a situation Fear or anxiety That's not placed with imminent harm Cannot result in Article III standing That's also true by virtue of the Supreme Court's holding In Valley Forge v. Americas United Because standing does not emanate from psychological consequences Produced by observance of conduct In this particular case What had happened was These individuals did not wait until it was certainly impending That they were going to be discharged At any point in time this was too speculative MetroHealth could have changed its mind They could have decided to get a shot How far does this argument go? Let's say they hadn't changed their mind on March 15 It's now March 23rd Is the rule that in this setting If you're not being harassed You've got to wait until you're fired And then you bring your claim? I think it does because as you identified earlier This was an unusual situation In which MetroHealth had repeatedly shown itself That it was trying to exist And understand what MetroHealth is It's a safety health system For those who don't have the ability to pay for their health care It's a hospital system It's a super safety net hospital And as the pandemic was evolving As was its guidance relative to Whether or not employees had to receive a vaccine or not So it was unreasonable for these individuals to do anything Let's get the timing I just want to make sure I have it right So you had to have your fully vaccinated Two doses by March 24th You had to have a vaccine by March 24th If you recall your honor There were three different approved shots at that time There was the Moderna, there was the Pfizer You only needed to have one shot by March 24th But you could have gotten the Johnson & Johnson Which required only one shot So you have to look at it in that context And that's why the context here is so important The case that I would identify Judge Sutton That I think is important is the Laster v. Kalamazoo case And that is a case that involves constructive discharge And that was one of the comments that you had made to Mr. Troyer earlier And in that particular instance The individual decided to resign the day before his pre-disciplinary hearing Because he was told that if he went through his pre-disciplinary hearing He was likely to be fired and he would lose his health care And in that particular case, the Sixth Circuit As determined by Judge Clay Had determined that that was not a constructive discharge Because it wasn't certain that it would actually happen And in this particular instance with respect to Plaintiffs 1 and 2 Or Appellants 1 and 2 It was not certainly impending that they would be discharged And in fact, it didn't happen And MetroHealth actually granted all of the exemptions On March 15, 2020 The choice they had was a preliminary injunction They could have sought a preliminary injunction They would have standing for a preliminary injunction Well, they might have But the question at that point was, was it too speculative? And that's one of the questions Which is, at that point, they were being told that our guidance is evolving But they didn't file a temporary restraining order They didn't ask for an injunction in any respect The Article 3 inquiry would be the same in both And I would think they would have Article 3 standing To come in and say, best we can tell We've got to get this shot or we're not going to have a job March 24 We think this is inappropriate, disparate treatment, etc Could you please tell them to not put this Draconian sword over us Or whatever the expression is Thank you for that question But I think this goes to Judge Bloom-Katz's comment With respect to the Bayer case And in the Bayer case, you had an individual who was actually denied his exemption request He then files suit in court And then Cardinal Health says Oops, we're going to grant your exemption And the Sixth Circuit determined in that case That he didn't have standing Because they changed their mind And so even if they had filed for a temporary restraining order Cardinal didn't change its mind before the suit was filed? It did not It changed it after So in the Bayer case, and this is important Which was in Bayer, he filed his lawsuit After Cardinal Health had decided That it wasn't going to grant his religious exemption Then after he filed it, Cardinal Health changed course And decided it would grant his exemption He then filed an amended complaint in which he asserted class action And said that he was suffering emotional distress As associated with their decision-making process And that is the same thing that's going on here And I think what's instructive is This is basically the same case all over again With respect to these individuals They didn't wait, they just were relying on speculation and fear And if you use the Lassiter case as one example Of the requirement of waiting Are there others, and ideally others That talk about this problem in the context of constructive discharge?  One of the best cases, Your Honor, is Goldmeier v. Allstate And in Goldmeier v. Allstate, another religious discrimination case In that particular case Allstate changed its policy And said that these observant Jews Were going to have to leave their Allstate agencies open On Friday evenings until 6 o'clock And also on Saturday in violation of their religious observance of Sabbath And in that particular case The Goldmeiers didn't wait And they didn't file a TLO, they resigned And in that particular case, the Sixth Circuit concluded That they could not establish constructive discharge Just to pause, and I'm sorry to interrupt you a little In those cases, interestingly They weren't saying there was an Article III problem So no one was throwing them out on that basis But that's why the court in this case That's why I'm suspicious about whether It seems like there probably is standing Because if you have standing to do a PI, you have standing Well, so let's talk about standing then Because I do think it's important The cases that I think this Court needs to focus on are four And they are Baer v. Cardinal Health I'm going to focus on people that leave right before the deadline Sure, and I think the one to focus in on is Buchholz v. Tarek Which was a Fair Debt Collection Practices Act case And the Court basically felt that the person had no standing In that particular case after having received two lawyer letters Because the person felt he was going to be sued As a result of those lawyer letters So that fear and anxiety You can go down those cases all you want But they strike me as quite different from a situation Where your livelihood is about to be yanked from under you Pay your mortgage, whatever the situation is It's a pretty significant deal not to have a job Well, I would say one of the two other cases That I would point this Court to is Norris v. Stanley Another Sixth Circuit decision And in Norris v. Stanley that was another vaccine case from Michigan State University In which case the one, Jennifer Norris The Court determined had no standing Because she had already received an exemption request I'd also point the Court's attention to Soloco v. Miami University Which is a 12th District Butler County Court of Appeals case Which also found that individuals who were granted exemption requests Could not amount to standing Now, even if this Court with respect to Plaintiff Appellate 1 and 2 And we disagree with that But even if the Court found in this particular instance That those two individuals had standing They have not, and this is what the District Court found The District Court found that they did not plausibly plead That they were disciplined or discharged Which is a requirement of a religious accommodation case Did Judge Gwynne have, was there a constructive discharge debate In front of Judge Gwynne as to 1 and 2 That's what Judge Gwynne actually decided in his order Which is that he basically found that He believed that there was Article 3 standing for those individuals But did not believe that they plausibly pled Discharge or discipline or that they suffered constructive discharge Forgive me for my ignorance He was thinking of it in terms of constructive discharge That's what I'm embarrassed I don't remember And I think that's really important here So what Judge Gwynne found was even if they had standing They did not plausibly plead discharge or discipline And they did not plead constructive discharge And if you don't plausibly plead it So is there pleading Right on that point is a matter of pleading As opposed to a matter of doctrine So I think what's important is to understand the time sequence here The complaint was filed on December 1, 2022 That was 8 and a half months after MetroHealth had granted the exemptions There was no temporary restraining order ever filed They knew what MetroHealth's position was And unlike the Behr case, Behr was given a 6 month exemption MetroHealth never placed any limit on the exemption And the court in Behr I'm asking a slightly different question What does the complaint say in December 2022 Does it say constructive discharge It alludes to a constructive discharge It alludes to things But again I think that the counts that you're referring to Are counts 1 and count 6 Which are the Title 7 and the Ohio Advise Code 41-12 I would urge this court to review both of them Because unlike what Mr. Troyer said earlier He actually didn't plead a disparate treatment case What he pled was a religious accommodation case And that's important Because in this context the 6th Circuit has repeatedly held That in order to allege, plausibly plead A Title 7 or Ohio Advise Code 41-12 Religious accommodation case You must plausibly plead Discharge or discipline And constructive discharge wouldn't count Well I think it would but again you have to plausibly plead that too And so that's the problem here They may have not used the exact words But you just told me that they have the facts alluding to it They were forced to resign because the ax was about to drop Here's the question The standard to plead a constructive discharge claim is You must suffer intolerable working conditions As perceived by a reasonable person With the intention of forcing someone to quit That's what constructive discharge is in the 6th Circuit In the last case that I think we were just discussing That my colleague authored We also have language about If it's clearly communicated that the ax is about to go And maybe it wasn't in that case Because it was uncertain whether the ax was going to fall But the test also is You know you're going to get axed But that's a constructive discharge Here's what I would point out Your Honor Which is 38 of the plaintiffs 38 of them did not feel compelled to resign So then the question has to become How could these others reasonably construe That MetroHealth was forcing them to resign Is that what we look at here at a 12B6? I think so It's plausibility And I don't think that's been plausibly pled in any respect Through the course of the complaint And with respect to the other groups And I didn't get a chance to sort of walk through the groups But there were people that actually resigned Judge Clay to your point They resigned after they were granted the exemption requests So the only two that are even arguable under the circumstance We're talking about 1 and 2 And I think that the problem with 1 and 2 Is if you look at the Buchholz v. Tarrick case Back to FDCPA I think so because these people were fearful of getting sued I mean the key cases are employment cases Where it looks like axes, swords, whatever You don't want to be there But here's what I would say Your Honor If that's true then you would grant Article 3 standing In any situation in which a person is put on a performance improvement plan That's the question presented in this case It's actually very difficult Does constructive discharge apply to these types of deadline cases I know full well it applies in sexual harassment Because the whole point is you can't stay there What's odd about this is you do have a form of relief A TRO, permanent injunction That's what I'm confused about I would agree but Your Honor I think also the important thing to consider Is that MetroHealth introduced the idea of the vaccine mandate On August 26, 2021 The original deadline was October 31, 2021 However when you submitted an exemption request Of which plans 1 and 2 did You were deemed compliant You were told you were deemed compliant And then MetroHealth kept changing the dates by which it would tell you When you were going to get granted Nothing said in early March that they were compliant No Your Honor, in fact March 15 MetroHealth changed course and said you were all compliant Everything up to March 15 Didn't say as long as you have the exemption in place Don't sweat it So the question then becomes was it certainly impending And that's the issue We got that And that's the issue here Which is it wasn't certainly impending at the dates that these people resigned And what I would say to that Your Honor very briefly because I know I'm out of time Is that plans 1 and 2 had months upon months upon months In living in this environment And they didn't feel compelled to resign They were there for more than 6 months After they had formed a belief that they weren't going to get vaccinated And yet they stayed And therefore they didn't plausibly plead That they would be constructively discharged at any point in time Thank you very much We'll hear some rebuttal Thank you Your Honor Just in the short time to do a quick review of the complaint I would point the court to paragraphs 103, 138 and 316 These are examples of plaintiffs that actually incurred Actual out-of-pocket medical expenses So this is kind of the response to Cardinal Health Where you have actual expenses and you tie them to individuals With a plausible theory We believe that there's actual harm here And again the bearer of the Cardinal Health case How about employees 1 and 2 Again the situation there is regards to their decision To say do I simply Wait until it's too late to find other employment So when you're given a date certain You must comply by this date My colleague uses the I ask you a question that may not be in the record Was there any form of You know you retired because of this And they said by the way we'll give you 6 weeks of pay Or anything like that Was it literally on March 24th That's that March 25th no pay Or was there zero communication on that point There was zero option and zero communication There was no negotiation of any kind There was no interactive So you had cold breath for your health care but no more salary Except what you were already owed as of March 24th A great deal of the injury to Mr. Sable and our second plaintiff Was what they gave up in their Ohio public employee retirement system benefits They lost a significant amount of funds there By having to resign their position Mr. Sable was only 18 months away from full retirement His retirement salary dropped From 75% of his base pay To 44% of his base pay for the rest of his life Forgive me I understand the interviewing Does the complaint say anything about whether This new employer of theirs Was willing to hold the job offer open until March 25th Is everything silent on that front As to 1 and 2 We made no allegations in regards to that I would also To get back to what my colleague says He made a comment that they were deemed compliant I think that's a misleading term They were not deemed compliant with the mandate Because they simply said you submitted an exemption request Which we will quote review They did not actually review But you still must be vaccinated by this date certain And it was October initially December next and then eventually March You must be vaccinated by this date certain And if you are not you will be deemed To have voluntarily resigned There were no other options Unless you submitted an exemption They first told you you had to be vaccinated by October 30th But if you submitted an exemption You did not have to comply by that deadline That's incorrect your honor The statement was that they would review those applications And issue a decision as to whether or not to grant them Or not prior to that deadline That was the deadline where you had to be vaccinated by So the problem was You have directly contradicted the point That they were silent about everyone having to leave If the exemption hadn't been granted on October 31st It sounds to me like you can't contradict that point I'm sorry the question is So the point is that the idea was That as long as you had your exemption request in October 31st didn't mean you had to leave And you're saying well it's a little unclear But I'm saying it's not clear in the other direction They didn't say in the other direction If you haven't gotten the vaccine or gotten an exemption granted You're out of here November 1st I think you probably have to acknowledge that So when the initial mandate came down They said you must be vaccinated by the end of October Or your subject determination Or if you have an exemption granted That came later So it's quiet about what happens It came on October 15th in the letter on October 15th If you've submitted your exemption No sweat right now Correct it came later only 2 weeks before the deadline It came later and said hey We've got a bunch of these we're going to review them But plaintiffs 1 and 2 did not resign Anticipating the October 30th No Okay I think we're good Thanks to both of you for your briefs It's an interesting tricky case So thank you very much for your help on it Okay the case will be submitted And the clerk may call the last case